RECEIVED
JUL - 5 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| STEPHEN D. WEEKS, and<br>JOHNNIE B. WEEKS, JR<br><br>-vs-<br><br>FRED'S STORES OF TENNESSEE,<br>INC. | CIVIL ACTION 1:15-CV-02297<br><br><br><br>JUDGE DEE D. DRELL<br><br>MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Now before the court are three motions for partial summary judgment filed by Defendant Fred's Stores of Tennessee, Inc. ("Fred's") (Docs. 50, 51, and 53) in the above-captioned case. The motions have been appropriately briefed and are now ripe for decision.[1] For the reasons explained below the court finds that Fred's motions should be **DENIED**.

### I. BACKGROUND

#### A. Relevant Facts

The above-captioned case concerns a portion of the Concordia Shopping Center in Vidalia, LA, which was leased to Fred's by Forsythe Holdings, Inc. ("Forsythe") for operation in or around March 21, 1994.[2] The lease between Fred's and Forsythe contained option agreements and amendments, which allowed for the extension of terms for an additional five-year period.[3] Fred's extended the option terms of the lease for the third period ending on May 31, 2009.[4] After the

---

[1] Plaintiffs' memoranda in opposition are found in the record at Docs. 59-61. Fred's reply briefs are found at Docs. 62-64.
[2] Lease Agreement between Fred's and Forsythe Holdings, Inc. Doc. 50-4 at p.3.
[3] Id. at p. 19
[4] Doc. 50-3 at p. 1-3.

expiration, Fred's continued to occupy the premises without notice to vacate or terminate by the lessor, thereby reconducting the lease under Louisiana Civil Code Article 2721.

Plaintiffs Stephen D. Weeks and Johnnie B. Weeks, Jr. acquired the property where Fred's was located by sheriff's sale on August 10, 2011.[5] Fred's continued to occupy the space and paid rent to Plaintiffs, lacking a new lease between the parties. Both parties began negotiations in order to execute a new lease; however, both parties acknowledge no formal agreement was made.[6]

From October 2013 through January 2015, Fred's made monthly excess payments to Plaintiffs in the amount of $80,400. Fred's asserts that overpayments were made due an internal accounting error. It is unclear whether Fred's was aware of the accounting error prior to January 2015. On January 9, 2015, Fred's vacated the premises.[7] Plaintiffs' suit seeks various damages, including, but not limited to, breach of the lease agreement and damages related to the condition of the property.[8]

Fred's first motion seeks partial dismissal of claims by Plaintiffs on the basis that the parties never entered into a new lease agreement or a lease extension and therefore Fred's is entitled to reimbursement of rent overpayment.

The second motion filed by Fred's seeks partial dismissal of claims by Plaintiffs on the basis that damages should be limited to those which may have been incurred after the property was acquired by the sheriff's sale in August 2011, and thereafter dismissing Plaintiffs' claim for pre-acquisition damage to the property for failure to provide evidence in support.

---

[5] Doc. 50-6.
[6] Doc. 50-3 at p. 2.
[7] Doc. 50-7.
[8] Doc. 1-2 at p. 1-2.

The third motion seeks partial dismissal of claims by Plaintiffs on the basis that damages recoverable by Plaintiffs should be limited solely to those outside of normal wear and tear to the building, which Fred's asserts totals to only $8,125.

**B. Applicable Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011)(internal citations omitted). However, the non-moving party does not establish a genuine dispute with "some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

**II. ANALYSIS**

A. Rent Overpayment

Fred's motion asserts that the parties never entered into a lease agreement or a lease extension, thus making Plaintiffs responsible for reimbursement of any overpayment accrued between October 2013 and January 2015 in the lump sum amount of $80,400. Having reviewed the motion, the memoranda in support and opposition, and exhibits attached thereto, we find that

there is a genuine dispute of material fact as to whether a lease agreement or lease extension was executed in order to increase rent payments.[9]

An original lease amendment provided that an option term was renewed beginning June 1, 2004 and ending on May 31, 2009 at the monthly amount of $4,333.33.[10] However, even if we apply the amendment here, amount at issue here ($80,400) far exceeds rents due under said original amendment. Plaintiffs contend that a verbal agreement was made with Fred's real estate manager establishing a rental amount of $5,025.00 to be paid to both Plaintiffs. The disputed payments began in October, mirroring the alleged overpayments. Plaintiffs also claim that this agreement was confected after the exchange of a lease, although no evidence supports that such a lease was signed by Fred's.

Fred's argues that the real estate manager had no authority to enter into a lease on behalf of Fred's and, therefore, a new lease agreement was never confected. Nevertheless, no satisfactory evidence has been provided by either party to establish the amount of rent agreed to be paid by Fred's and whether a new lease agreement was perfected.

Additionally, even if a new agreement was in effect at the time of overpayment, there is a genuine dispute of material fact as to the nature of Fred's mistake which led to the overpayments. Fred's supplies the court with evidence suggesting a technical error but no further explanation.[11].

---

[9] The original lease had a fixed term, which expired in 2009, and therefore was reconducted because of failure of Fred's receiving notice to vacate or terminate or other opposition by the lessor. La. Civ. Code Ann. art. 2721; Doc. 50-5.

[10] Doc. 50-5.

[11] There is a split between the Louisiana First and Second Circuit Court of Appeal providing conflicting rulings on the issue of repayment because of a person's mistake. According to Metropolitan Life Ins. Co. v. Mundy, 167 So. 894 (La. Ct. App. 1936) quoting Carey v. Commonwealth Building & Loan Ass'n, 81 So. 734, 736 (La. 1919), "[d]efendant is not answerable for a plaintiff's ignorance of fact, due to his own neglect…" A defendant is responsible to investigate a matter and employ due diligence in order to find that, if a mistake is made, it is "the honest or unavoidable mistake that a usual prudent individual might make under certain circumstances, and not the mistake which is entirely the result of his own gross carelessness." The quote by the court is referencing the mistake intended by the Civil Code, Art. 2301, et seq. Id. at 896. Alternatively, the court in Pioneer Bank & Trust Co. v. Dean's Copy Products, Inc., 441 So.2d 1234,1237 (La. Ct. App. 1983) declined to follow Metropolitan and found that negligence should not be a bar recovery of payments, as long as the person receiving the incorrect payment did

We find that Fred's has not, at this stage, proven its allegation that no new agreement was made between parties, thus making a determination on the reimbursement of overpayment impossible at this time. The lack of conclusive evidence surrounding the circumstances of the overpayment and the inconclusive nature of what agreement was in effect while rent payments were being made make it inappropriate for us to grant summary judgment on this issue.

### B. Motion for Damage at Sheriff's Sale

Fred's motion in this regard asserts that Plaintiffs' damages incurred because of their purchase of the relevant property at the sheriff's sale in August 2011 should be limited. Fred's stresses entitlement to a judgment as a matter of law based on the application of Louisiana's "subsequent purchaser doctrine." The subsequent purchaser doctrine is a jurisprudential rule which provides that

> an owner of a property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

Eagle Pipe & Supply v. Amerada Hess Corp., 79 So.3d 246, 257 (La. 2011). As explained by the Louisiana Third Circuit Court of Appeal in Lejeune Bros., v. Goodrich Petroleum Co., LLC, 981 So.2d 23 (La. App. 3 Cir. 2007), Louisiana jurisprudence overwhelmingly classifies a right of action on damages to land as a personal right, rather than a real right that runs with the land. La. Civ. C. Art. 1758; Lejeune, 981 So.2d at 31.

---

not suffer detriment as a result of receiving the money. See Central Surety and Insurance Corporation v. Corbello, 74 So.2d 341, 344(La. App. 1st Cir. 1954). A later case in Louisiana's Second Circuit Court, Texas Gen. Petroleum Corp. v. Brown, 408 So. 2d 288, 292 (La. Ct. App. 1981), states that, "[a] grossly careless mistake which could have been avoided by ordinary diligence is to be distinguished from the mistake that reasonable minds would conclude is sometimes made even by reasonable persons in the ordinary course of business," further supporting that the nature of the mistake in relation to the course of the business must be evaluated in order to determine if repayment is proper in certain cases.

The Fred's lease was effective against third persons per La. R.S. 9:2721(C).[12] However, such lease did not contain an express assignment of the right to sue for pre-acquisition damage, which Plaintiffs have incorrectly asserted in their opposition. Plaintiffs point to a clause within the mortgage certificate prepared in preparation for the sheriff's sale as providing express subrogation of personal rights.[13] However, the clause does not expressly assign pre-acquisition rights or, more specifically, those rights stemming from an expired lease. Thus, as stated in <u>Boone v. Conoco Phillips Co.</u>, 139 So.3d 1047, 1054 (La. App. 3 Cir. 2014), "even when property is conveyed during the term of a lease, the purchaser cannot recover from the lessee for damages accruing prior to the sale."[14]

While Plaintiffs may be limited in recovering damages alleged to have occurred prior to sheriff's sale, they may potentially recover damages as a result of a breach of contract, depending on the particular lease terms in effect at the time of the breach. If original lease terms were in effect, Plaintiffs might recover damages for breach of contract related to maintenance of the property. However, Plaintiffs have presented no evidence by which this court might distinguish pre-purchase damage from post-purchase damage. Fred's points out that Plaintiffs only provided evidence that analyzes restoring the property

---

[12] La. R.S. 9:2721 (C) states: Anyone who acquires immovable property in this state, whether by sale, sheriff's sale, giving in payment, or in any other manner, which property is subject to a recorded lease agreement that is not divested by the acquisition, shall take the property subject to all of the provisions of the lease, including any provision for payment of a commission to a leasing agent or other third party, provided that the lease was recorded prior to the recordation of the document which establishes the rights of the person who acquires the property…
[13] Doc. 60-5 at 3.
[14] *See also* <u>Prados v. South Central Bell Tel. Co.</u>, 329 So.2d 744 (La. 1975).

to its "original condition"[15] instead of determining the level of non-ordinary wear and tear the property suffered from the time of purchase to time of vacating the premises.[16]

The evidence provided by both parties is inconclusive and per our discussion of the first motion, we find that, without a clear determination of what lease terms or arrangement were in effect, the issue of damages and their potential limitation cannot be approached. Therefore, the court is likewise unable to grant the instant motion.

Plaintiffs' opposition asserts that the subsequent purchaser doctrine is an affirmative defense which was not pleaded in Fred's original answer. Therefore, its motion should be denied. According to Louisiana jurisprudence, an "[a]ffirmative defense raises new matter which, assuming allegations in petition to be true, constitutes defense to action and will have effect of defeating plaintiff's demand on its merits."[17] We do not find Fred's motion identifying the subsequent purchaser doctrine as an affirmative defense. Like Fred's motion, which asserts that the subsequent purchaser doctrine merely establishes a limitation for recovery of damages, we agree. Per the construed definition of an affirmative defense in Louisiana, the subsequent purchaser doctrine, in these circumstances, does not raise a new matter and would not defeat Plaintiffs' claim on the merits, but may limit the amount of recovery.

The evidence provided by both parties leads the court to believe that Plaintiffs will be unable to prove their assertion that the subsequent purchaser doctrine is not applicable and, if not applicable to prove that they received express subrogation. However, neither assertion would

---

[15] Doc. 51-1 at 11.
[16] Louisiana's Civil Code Article 2683(3) states: The lessee is bound…to return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter."
[17] Webster v. Rushing, 316 So.2d 111, 114 (La. 1975). See Solomon v. Hickman, 213 So.2d 96, 97 (La. App. 1 Cir 1968). Black's Law Dictionary Tenth Edition, defines 'affirmative defense' as: '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.

necessarily defeat Plaintiffs' claim for damages entirely, further persuading the court to find that the subsequent purchaser doctrine is not an affirmative defense in these circumstances. To be sure, Plaintiffs have provided a single case construing subsequent purchaser doctrine as an affirmative defense, however, we do not find it to be persuasive authority.[18] In it, the deciding judge simply opined that it was with no citation of authorities for the proposition.

### C. Motion for Damage for Normal Wear and Tear

Fred's motion asserts that Plaintiffs' recovery of damages should be limited solely to damages outside of normal wear and tear to the building. Fred's alleges that the original lease remained in effect, and therefore, Plaintiffs are only entitled to damages that exceed normal wear and tear.[19] Fred's proffered expert opines that the damage to property exceeding ordinary wear and tear amounts to about $8,125.00.

Contrarily, Plaintiffs assert that Fred's owes over $184,158.00 in damages related to breached terms of the original lease for failure to undertake proper maintenance of the property. However, we have noted the record lacks sufficient evidence establishing whether the original lease terms or a new agreement were in effect during the events at issue. Ultimately, the extent and other cause of damages of the property are likely speculative and an issue of disputed fact for a jury's consideration. For these aforementioned reasons, Defendant's third motion for partial summary judgment will also be denied.

## III. CONCLUSION

After review of the law and argument advanced by the parties, as well as the evidence submitted in this matter, the court finds that Fred's, as movant herein, has not demonstrated its

---

[18] Broussard v. TMR Co., 2013 WL 5516462 (W.D. La. 2013).
[19] The lessee is bound to return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter. La. Civ. Code Ann. art. 2683(3).

entitlement to judgment as a matter of fact or law. Specifically, the court finds that inconclusive evidence presented by both parties in regards to potential lease agreements, or lack thereof, prevents the court from making determinations related to potential breaches of contract and the extent of damages. Defendant has not presented sufficiently convincing evidence to diminish the existence of speculation in determining cause and extent of damages. Accordingly, all motions for summary judgment will be denied and the court will issue a judgment in conformity with these findings.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT